

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

SYLVIA E. NOFSINGER,

Plaintiff,

v.

Civil Action No. 3:12-CV-236

VIRGINIA COMMONWEALTH UNIVERSITY,
and

E. DOUGLAS BOUDINOT, CECIL B. DRAIN,
THOMAS P. MAYHEW, LISA D. SHOAF,
EMMA WHEELER, all in their official and
individual capacities, and

U.S. PHYSICAL THERAPY, INC.,

Defendants.

## MEMORANDUM OPINION

THIS MATTER is before the Court on the following motions: (1) a Motion to Dismiss

Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6) (Doc. No. 5) filed by Defendants Virginia

Commonwealth University ("VCU") and E. Douglas Boudinot, Cecil B. Drain, Thomas P.

Mayhew, Lisa D. Shoaf, and Emma Wheeler (collectively "individual Defendants"); (2)

Defendant U.S. Physical Therapy, Inc.'s ("USPT") Motion to Dismiss Pursuant to Fed. R. Civ.

P. 12(b)(6) (Doc. No. 12); (3) Plaintiff Sylvia Nofsinger's ("Nofsinger") Motion for Leave to

File Amended Complaint (Doc. No. 27); and (4) a Motion to Dismiss the First Amended

Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. No. 30) filed by VCU and the individual

Defendants.

For the reasons stated below, the Court DENIES Nofsinger's Motion for Leave to File

Amended Complaint (Doc. No. 27), GRANTS the Motion to Dismiss Pursuant to Fed. R. Civ.

1

P. 12(b)(1), 12(b)(6) (Doc. No. 5) filed by VCU and the individual Defendants, GRANTS

USPT's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. No. 12), and DENIES AS

MOOT the Motion to Dismiss First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)

(Doc. No. 30) filed by VCU and the individual Defendants.

## I.  BACKGROUND

### A.  Factual Background

This case arises out of Plaintiff Nofsinger's dismissal from VCU's graduate physical

therapy program. Nofsinger enrolled in the Doctor of Physical Therapy Program at the

School of Allied Health Professions at VCU in the summer of 2006, and remained in the

program until the spring of 2009. By that time, Nofsinger had completed 85 credit hours

and compiled a sterling academic record, having received an "A" grade in every course

taken but two, resulting in a grade point average of 3.85. As part of her course of study, she

enrolled in Clinical Education II (the "Clinical"), a required clinical instruction course, for

the summer of 2009. For the Clinical, VCU placed Nofsinger in Christiansburg, Virginia, at a

USPT site known as University Physical Therapy. A USPT employee named Terri Ferrier

acted as the Clinical Instructor for VCU, and thus for Nofsinger, teaching the course at the

USPT site in Christiansburg pursuant to an affiliation agreement entered into between

USPT and VCU.

The Complaint alleges that Nofsinger initiated a conversation with Ferrier after

class on July 30, 2009 regarding the requirements to receive a passing grade in the Clinical.

Nofsinger was "concerned about maintaining her excellent grades through the completion

of the clinical program and [about a] lack of communication from Ms. Ferrier." (Compl. 2.)

After Ferrier and Nofsinger spoke, Ferrier invited Nofsinger to "come home" and join her

2

for dinner.[1] When Nofsinger arrived, Ferrier gave her a hug, and nothing further was said about their discussion.

Nofsinger and Ferrier completed an evaluation of Nofsinger's performance in the Clinical. (The evaluation form called for both a self-evaluation by the student and for an evaluation by the instructor.) (Compl. ¶ 17; *see* Defs.' Mem. Supp. Mot. Dismiss Compl. Ex. A.)[2] "Professional Behavior," "Communication," and "Professional Development" were among the categories assessed in the evaluation. (Defs.' Mem. Supp. Mot. Dismiss Compl. Ex. A.) VCU's Student Handbook and Policies and Procedures Manual ("Student Handbook") provides:

> Satisfactory performance in all clinical education is a requirement for advancement through the professional program and for graduation. A decision to remove a student from a clinical practicum is made by the Director of Clinical Education (Director) and the clinical facility. In case of failure or withdrawal from a clinical practicum, the Director will decide, in

---

[1] Nofsinger was renting a room at Ferrier's home, apparently at the suggestion of Defendant Lisa Shoaf. (Compl. ¶ 15.)

[2] The Complaint does not attach, but expressly references, the evaluation and a number of other pertinent documents. VCU and the individual Defendants attach those documents to their Memorandum in Support of their Motion to Dismiss (Doc. No. 6), noting that the Fourth Circuit has said documents incorporated by reference to a complaint may be considered by the district court without converting a motion to dismiss into a motion for summary judgment. *See Robinson v. Ladd Furniture, Inc.*, No. 92-2286, 1993 U.S. App. LEXIS 14252, at *8–9 (4th Cir. June 14, 1993). In light of *Robinson*, for purposes of considering the pending motions, the Court will consider the evaluation and all of the other documents attached to the Memorandum in Support of the Motion to Dismiss filed by VCU and the individual Defendants, as those documents were specifically referenced and relied upon by Nofsinger in her Complaint. (*See* Complaint ¶¶ 17, 51 (incorporating Clinical Education II Evaluation, Defs.' Mem. Supp. Mot. Dismiss Compl. Ex. A), ¶¶ 17, 21 (incorporating Aug. 13, 2009 Letter from Thomas Mayhew to Sylvia Nofsinger, Defs.' Mem. Supp. Mot. Dismiss Compl. Ex. B), ¶¶ 16, 22 (incorporating Aug. 13, 2009 Letter from F. Douglas Boudinot to Sylvia Nofsinger, Defs.' Mem. Supp. Mot. Dismiss Compl. Ex. C), ¶¶ 14, 36–38, 43 (incorporating Clinical Affiliation Agreement Between VCU and Virginia Sports Medicine and Physical Therapy, and First Amendment to Student Clinic Rotation Agreement, Defs.' Mem. Supp. Mot. Dismiss Compl. Ex. D), ¶¶ 48, 49, 53–54 (incorporating Student Handbook and Policies and Procedures Manual, and Clinical Education Policy and Procedure Manual, Defs.' Mem. Supp. Mot. Dismiss Compl. Ex. E).)

> consultation with the faculty, whether to allow the student to repeat the practicum. The Director is responsible for assigning the final grades for clinical education. A student who wants to dispute a final grade in clinical education should follow the Academic and Clinical Grade Review and Grievance Procedures.

(Defs.' Mem. Supp. Mot. Dismiss Compl. Ex. E, at 23.) The Student Handbook further provides that if a student "fail[s] a full-time clinical experience, the faculty may decide to dismiss you from the program or permit you to repeat that clinical assignment." (*Id.* at 27.)

On August 12, 2009, after Nofsinger and Ferrier both completed the evaluation, Thomas P. Mayhew, Chair and Associate Professor, Department of Physical Therapy, contacted Nofsinger by telephone to inform her that she was being dismissed from the program. (Compl. ¶ 15.) The next day, Mayhew also sent Nofsinger a letter that informed her she was being dismissed for academic reasons and that she had failed the Clinical. (Compl. ¶ 17; Defs.' Mem. Supp. Mot. Dismiss Compl. Ex. B.) F. Douglas Boudinot, Dean, School of Graduate Studies, also mailed Nofsinger a letter on August 13 stating, *inter alia*, that she was being dismissed for "lack of academic progression and professional behavior." (Compl. ¶ 16; Defs.' Mem. Supp. Mot. Dismiss Compl. Ex. C.)  Nofsinger alleges that Cecil B. Drain, Dean, School of Allied Health Professions, ratified Mayhew and Boudinot's actions, making her dismissal effective on August 13, 2009, the date that Mayhew and Boudinot sent the letters. (Compl. ¶ 23.)

Nofsinger's Complaint alleges that Mayhew's letter dismissing her for "academic reasons" because she failed the Clinical

> was a pretext, as Ms. Nofsinger had in fact not failed the Clinical II course. According to a June 12, 2009 email from Defendant Shoaf, in order to pass the clinical course a student's scores "should be better than advanced beginner but not yet expected to be all the way to the entry-level mark." Every one of Plaintiff's scores on the evaluation for the summer 2009 Clinical Education II course exceeded the "Advanced Beginner" level.

4

(Compl. ¶ 17.) Shoaf was VCU's Director of Clinical Education for the Physical Therapy Program. (Defs.' Mem. Supp. Mot. Dismiss Compl. Ex. D.) Nofsinger asserts that she was only told some time later that "alleged prior conduct as reported in her file formed part of the basis for her dismissal." (Compl. ¶ 18.) Moreover, throughout the Complaint, Nofsinger strongly implies that it is "apparent" that her July 30, 2009 conversation with Ferrier was crucial to the decision to dismiss her from the program. Nofsinger claims that she was never told prior to her dismissal about alleged incidents being part of her student performance record, never shown reports about the alleged incidents, and never given an opportunity to confront her accusers with respect to the alleged incidents.

Nofsinger's Complaint contains six counts. Nofsinger brings two claims under 42 U.S.C. § 1983 against the individual Defendants. In Count 1, Nofsinger brings a procedural due process claim, asserting that the individual VCU defendants, acting under color of state law, deprived her of a property interest in continued enrollment in the program without notice of the alleged incidents, an opportunity to review written reports about them, and an opportunity to confront or even talk with the accusers about the incidents. (Compl. ¶¶ 22–24.) In Count 2, Nofsinger brings an equal protection claim. She asserts the individual VCU defendants treated her in a disparate manner from as many as six other similarly situated students who have been subject to VCU's dismissal procedures, thus violating her right to equal protection. Nofsinger claims these other students, similar to her, were not dismissed, but instead given the chance to retake classes where their performance had been deemed unsatisfactory. (Compl. ¶¶ 27, 29.) Count 3 merely states the means by which Nofsinger is seeking to enforce her rights—42 U.S.C. § 1983.

5

Counts IV and V allege breach of contract. With respect to both of these counts, Nofsinger claims that she was the third-party beneficiary of the affiliation agreement referenced above, entitled "Clinical Affiliation Agreement Between Virginia Commonwealth University and Virginia Sports Medicine and Physical Therapy" and dated October 15, 2006; and an amendment to that agreement entitled "First Amendment to Student Clinical Rotation Agreement," (collectively "Affiliation Agreement") dated February 1, 2008. (Defs.' Mem. Supp. Mot. Dismiss Compl. Ex. D.) Count IV alleges breach of contract against USPT and Count V against VCU. Finally, in Count VI, Nofsinger asserts an additional breach of contract claim against VCU. She claims VCU violated the terms of the Student Handbook and Clinical Manual.

### B. Procedural Background

This case involves a somewhat tortured procedural history.[3] On August 2, 2011, Nofsinger filed suit in this District, alleging procedural due process and equal protection claims under 42 U.S.C. § 1983 against a number of VCU employees, in their individual and official capacities. Complaint for Declaratory and Injunctive Relief, *Nofsinger v. Rao*, No. 3:11-CV-499 (E.D. Va. Aug. 2, 2011), Doc. No. 1. Those defendants were: Michael Rao, President of VCU; E. Douglas Boudinot, Dean, School of Graduate Studies; Cecil B. Drain, Dean, School of Allied Health Professions; Thomas P. Mayhew, Chair and Associate Professor, Department of Physical Therapy; Lisa D. Shoaf, Associate Professor, Department of Physical Therapy; and Emma Wheeler, Assistant Professor and Chair of Admissions.

---

[3] This history is primarily taken from an Opposition to Nofsinger's Motion for Leave to Amend Complaint filed by VCU and the individual Defendants. (*See* Defs.' Response Opp. Pl.'s Mot. Leave 1–3, Doc. No. 29.)

The individuals waived service and filed a motion to dismiss on September 30, 2011. That same day, shortly before the motion to dismiss was filed, Nofsinger filed an amended complaint that named the same individual VCU defendants and again alleged procedural due process and equal protection violations. VCU and the individual Defendants claim that the facts alleged in that amended complaint were essentially the same as the original complaint: Nofsinger claimed she was notified of her dismissal from the graduate physical therapy program on August 12, 2009, by a phone call with Mayhew; Nofsinger received letters from Mayhew and Boudinot notifying her of her dismissal for failure of the Clinical and for lack of professionalism; and she met with Emma Wheeler and Lisa Shoaf on August 20, 2009 to appeal her failure of the Clinical and dismissal from the graduate program. The amended complaint also added a breach of contract claim against Nofsinger's Clinical instructor, Terri Ferrier.

The individual VCU defendants filed a motion to dismiss the amended complaint on October 14, 2011, and Ferrier did the same on October 21. On October 28, Nofsinger filed a motion for extension of time to file a response to the individual VCU defendants' motion to dismiss. The VCU defendants did not oppose the motion, and Nofsinger was granted leave to file her response to the VCU defendants' motion to dismiss on or before November 4, 2011. On November 4, 2011, however, Nofsinger instead voluntarily dismissed her suit.

Nofsinger originally filed the Complaint in this case in the Montgomery County, Virginia, Circuit Court on November 16, 2011. She again alleges procedural due process and equal protection claims against individual VCU defendants, but brings for the first time the breach of contract claims against VCU and USPT in which she claims to be a third-party beneficiary to the Affiliation Agreement entered into by VCU and USPT. After being served

the Complaint, the Defendants removed the case to the Western District of Virginia. On

January 27, 2012, VCU and the individual Defendants filed a motion to dismiss and a

motion to transfer the case to the Eastern District of Virginia. USPT filed its own motion to

dismiss on January 31, 2012. On February 9, 2012, Nofsinger filed a motion for extension of

time to file a response to the motions to dismiss. VCU and the individual Defendants did not

oppose the motion for extension; USPT filed an opposition on February 13. On February 13,

the district court granted Nofsinger an extension of time to respond to the motions,

ordering her responses due on or before February 27, 2012. Instead of filing a response on

that date, Nofsinger filed an untimely First Amended Complaint ("Amended Complaint").

Nofsinger's Amended Complaint omits the previous Counts III, V, and VI alleged in her

Complaint. Adding some factual allegations, the Amended Complaint again asserts a

procedural due process claim (Count I) and an equal protection claim (Count II) against the

individual Defendants. In Count III, Nofsinger brings a third-party beneficiary claim for

breach of contract against Defendant USPT. VCU and the individual Defendants assert that

the factual allegations in the Amended Complaint merely mirror the factual allegations of

the Complaint and in turn the allegations set forth in the complaints filed in the prior

lawsuit, with one exception: Nofsinger does not mention any meeting with Wheeler and

Shoaf about appealing her dismissal.

Nofsinger does not contest that the Amended Complaint is untimely. Instead, she

claims that she failed to include a provision for extending the time to file an amended

complaint in her motion for extension of time to respond to the motions to dismiss, and

"mistakenly believed the order extending time to respond to the motions to dismiss also

extended the time to file an amended complaint without leave under Rule 15(a)(1)(B), as

8

contemplated by the motion." (Pl.'s Mem. Supp. Mot. Leave 2.) Shortly after Nofsinger filed

her untimely Amended Complaint, USPT, and later VCU and the individual Defendants, filed

"reply" briefs in support of their respective motions to dismiss the Complaint, stating that

since no response had been filed, the motions should be considered unopposed and

granted. Nofsinger then moved for leave to file the untimely Amended Complaint, claiming

that her mistaken belief concerning the order also including a provision extending the time

to file an amended complaint was brought to her attention when USPT filed its "reply" brief

asking that its motion to dismiss be considered unopposed.

    In summary, the procedural posture of the case is this: all Defendants have moved to

dismiss the Complaint, and ask the Court to deny Nofsinger leave to file her untimely

Amended Complaint on the ground that granting her leave to amend would be futile. VCU

and the individual Defendants have also preemptively filed a Motion to Dismiss the First

Amended Complaint. To cut through the quagmire of filings and pending motions, it is fair

to say that there is only one issue before the Court: can either of Nofsinger's pleadings

survive a motion to dismiss?

    The Court's answer to that question is discussed below.

## II.   LEGAL STANDARDS

    Under Federal Rule of Civil Procedure 15(a)(1), a plaintiff may amend his or her

complaint once as a matter of right within 21 days after service of the complaint or within

21 days after the filing of a motion to dismiss. All other amendments, however, require

leave of court. Fed. R. Civ. P. 15(a)(2). Although the district court "should freely give leave

when justice so requires," *id.*, an amendment may be denied when it is prejudicial to the

opposing party, there has been bad faith on the part of the moving party, or it would be

futile as a matter of law. *Steinburg v. Chesterfield Cnty. Planning Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008). In determining whether a proposed amendment is futile as a matter of law a court may consider whether the amended complaint could withstand a motion to dismiss. *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995).

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)).

### III.   ANALYSIS

#### A.  42 U.S.C. § 1983 Procedural Due Process Claims

In Count I of her Amended Complaint, Nofsinger alleges, in precisely the same terms as she did in her Complaint, "Plaintiff had a property interest in continued enrollment in VCU's [Doctor of Physical Therapy] Program protected by the Fourteenth Amendment to the United States Constitution." (Am. Compl. ¶ 28.) The individual Defendants argue that this allegation is insufficient to plead the first element of a procedural due process claim—a property interest protected by the Constitution—and that consequently the Court should deny Nofsinger leave to amend as the Amended Complaint cannot survive a motion to dismiss. The individual Defendants also argue that even if the Court were to simply assume that Nofsinger adequately pleads a protected property interest, her procedural due process claim must be dismissed, because the decision to dismiss her was an academic one, and Nofsinger was afforded ample due process.

10

The first question in any procedural due process analysis is whether the plaintiff has been deprived of a liberty or property interest that is protected by the Fourteenth Amendment, because the requirements of procedural due process only apply when such protected interests are implicated. *See Bd. of Regents v. Roth*, 408 U.S. 564, 569–70 (1972). "Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Id.* at 577. To possess a property interest, a claimant "must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.*

The Fourth Circuit has never held that continued enrollment in graduate school constitutes a protected property interest. Other district courts facing the issue have either assumed that the plaintiff had a protected property interest for the purposes of decision, *e.g., Tigrett v. Rector & Visitors of the Univ. of Va.*, 137 F. Supp. 2d 670, 675 (W.D. Va. 2001), or held that the plaintiff did not have a protected interest in continued enrollment. *E.g., Nigro v. Va. Commonwealth Univ. Med. Coll. of Va.*, No. 5:09-CV-64, 2010 U.S. Dist. LEXIS 56229, at *16–18 (W.D. Va. June 4, 2010); *Davis v. George Mason Univ.*, 395 F. Supp. 2d 331, 335–36 (E.D. Va. 2005), *aff'd*, 193 F. App'x 248 (4th Cir. 2006).

The Court finds that Nofsinger's pleadings fail to identify a protected property interest. Nofsinger's conclusory allegation that she "had a property interest in continued enrollment" in the graduate physical therapy program is not enough; she must point to some Virginia statute or rule showing that she has a "legitimate claim of entitlement" to her continued enrollment in the graduate school program. This she has not done. At the hearing Nofsinger directed the Court's attention to three cases that supposedly establish a

11

property interest in continued enrollment in a graduate program. The Court's review of these cases reveals they establish no such interest. The first case cited by Nofsinger only points to the general proposition that a state legislature can create a legitimate claim of entitlement protected by the Constitution, *see Herron v. Va. Commonwealth Univ.*, 366 F. Supp. 2d 355, 358 (E.D. Va. 2004) (citing *Goss v. Lopez*, 419 U.S. 565, 573 (1975));[4] the second case proffered by Nofsinger is yet another case that only assumed a protected property interest for the purposes of decision, *see Butler v. Rector & Bd. of Visitors of Coll. of William & Mary*, 121 F. App'x 515, 518 (4th Cir. 2005); and the third did not even pass on the issue of due process, because a private nongovernmental entity, and not the state, was involved. *McNeal v. Richmond Mem'l Hosp.*, 36 Va. Cir. 531, 532 (Va. Cir. Ct. 1995) (Richmond City).

Even if Nofsinger had pled a protected property interest, her procedural due process claim would fail, because the decision to dismiss her was an academic one based on her failure of the Clinical and apparently related lack of professionalism, and she received all the process due to her in such a situation. Nofsinger was well aware that professionalism was a criterion used to evaluate her in the Clinical,[5] and was also on notice

---

[4] The *Herron* court merely cited *Goss v. Lopez* for the general proposition that "[t]he Supreme Court has held that academic dismissals implicate a student's liberty or property interests and are thereby protected by the due process guarantee of the Fourteenth Amendment." 366 F. Supp. 2d at 358. The Supreme Court in *Goss* said that aggrieved high school students "plainly had legitimate claims of entitlement to a public education," 419 U.S. at 573, because an Ohio statute—an independent source of state law—"direct[ed] local authorities to provide a free education to all residents between five and 21 years of age." *Id.* That the Supreme Court found an Ohio statute granted high school students a legitimate claim of entitlement to a free public school education is irrelevant. The issue here is whether any Virginia statute or other source of state law has done the same for Nofsinger.
[5] As noted by the individual Defendants, relevant categories in the evaluation included "Professional Behavior," "Communication," and "Professional Development." (Defs.' Mem. Supp. Mot. Dismiss Compl. Ex. A.)

that professionalism was at the very core of the Department's philosophy—and thus necessary for success in the program.[6] She was likewise on notice that "[s]atisfactory performance in all clinical education [wa]s a requirement for advancement through the professional program and for graduation"; that "[t]he Director of Clinical Education [wa]s responsible for assigning the final grades for clinical education"; and that "[i]n case of failure . . . [of] a clinical practicum, the Director w[ould] decide, in consultation with the faculty, whether to allow [her] to repeat the practicum." (Defs.' Mem. Supp. Mot. Dismiss Compl. Ex. E, at 23.) The Handbook also informed Nofsinger of the process available to her should she wish to dispute a final grade: "A student who wants to dispute a final grade in clinical education should follow the Academic and Clinical Grade Review and Grievance Procedures." (*Id.*)

 Mayhew and Boudinot's letters make it crystal clear that Nofsinger was dismissed from the Program for an academic reason—her failure of the Clinical, the passing of which was required for her advancement in the program. Each of their letters went on to notify Nofsinger that she could dispute her final grade by following the grade review procedures outlined in the Handbook. Boudinot's letter indicates further that lack of professionalism

---

[6] A section entitled "Philosophy of the Department" states, "[P]hysical therapists . . . must demonstrate the highest levels of professionalism in their interactions with patients/clients, families, and colleagues. "(Defs.' Mem. Supp. Mot. Dismiss Compl. Ex. E, at 6.) Part III of the Student Handbook, covering "Professional Program Requirements," contains Part III.B, "Professional Behavior and Essential Functions." That section of the Handbook defines "professionalism" as "[t]he ability to exhibit professional conduct and to represent the profession effectively," and notes that "attaining competency" in "professional behavior" is part of "[t]he process of becoming an effective physical therapist." (*Id.* at 12–13.) "Professionalism" is listed among ten generic abilities "considered by the faculty to exemplify the professional behaviors valued by the profession." (*Id.*) The Handbook makes abundantly clear that a student's professionalism will be assessed throughout the program: "Throughout the professional program a student's competency in these generic abilities will be formally and informally evaluated by academic and clinical faculty." (*Id.* at 12.)

factored into Nofsinger's dismissal, and presumably her grade in the Clinical—which would be more than reasonable in any clinical education setting, but especially this one, given that professionalism was stressed as a criterion not only in the evaluation for the Clinical itself but for the program as a whole.

> Mayhew wrote in his August 13, 2009 letter to Nofsinger:
>
> I regret to inform you that you did not meet the requirements to continue in the Professional Physical Therapy Program and you have been officially dismissed effective August 7, 2009 for academic reasons. As you know you were expected to maintain a grade point average (GPA) of at least 3.00 and not receive any grades of "D" or "F" in your coursework. You received a grade of F in <u>PHTY 650 Clinical Education II</u> [i.e., the Clinical] and, therefore, you are dismissed from the DPT program.
>
> Please refer to your Student Handbook and Policies and Procedures Manual and the current Graduate Bulletin regarding your right to appeal this decision. Specific information can also be found in the School of Allied Health Professions Policies and Procedures Manual.

(*Id.* Ex. B.) Boudinot similarly wrote to Nofsinger, "I am sorry to inform you that, upon the recommendation of the School of Allied Health Professions, you have been terminated officially from the doctoral program . . . . This action is necessary based on lack of academic progression and professional behavior." (*Id.* Ex. C.) Like Mayhew, Boudinot also informed Nofsinger of her right to appeal and referred her to the processes outlined in the Graduate Bulletin.

In the context of an academic dismissal like this one, which "by its nature [is] more subjective and evaluative than the typical factual questions presented in the average disciplinary decision," *Bd. of Curators of the Univ. of Mo. v. Horowitz*, 435 U.S. 78, 90 (1978), the Supreme Court and lower federal courts have taught that "the standard for evaluating whether there has been a denial of procedural due process is substantially relaxed," *Betts v. Rector & Visitors of the Univ. of Va.*, No. 97-1850, 1999 U.S. App. LEXIS 23105, at *23 (4th

14

Cir. Sept. 22, 1999) (citing *Siu v. Johnson*, 748 F.2d 238, 244–45 (4th Cir. 1984)). In

*Horowitz*, the Supreme Court explained the reasoning for this relaxed standard: "Like the

decision of an individual professor as to the proper grade for a student in his course, the

determination whether to dismiss a student for academic reasons requires an expert

evaluation of cumulative information and is not readily adapted to the procedural tools of

judicial or administrative decisionmaking." 435 U.S. at 90. A hearing is certainly not

required, *id.* at 90–91, and a "careful and deliberate" decision is clearly sufficient, *id.* at 85.

In the final evaluation category "Professional Behavior," Nofsinger's Clinical

Instructor, Terri Ferrier, commented: "Sylvia struggles with managing conflict in a positive

and constructive manner. She has demonstrated confrontational behavior toward the CI on

several occasions, at times in front of a patient. She becomes defensive and at times

argumentative when the CI attempts to provide feedback regarding her performance or

approach." (Defs.' Mem. Supp. Mot. Dismiss Compl. Ex. A, at 1–2.) With respect to her final

evaluation in "Communication," Ferrier wrote, "Sylvia has difficulty with effective and

appropriate communication in many situations. . . . She initiates communication with the CI,

but frequently tends to argue her point beyond what would be appropriate. Sylvia fails to

demonstrate good active listening skills and does not recognize nonverbal cues on a

consistent basis." (*Id.* at 2.) And with regard to "Professional Development," Ferrier opined,

"Sylvia does not consistently recognize her strengths/limitations in clinical performance.

When approached about her limitations/struggles, she frequently argues her point and

fails to comprehend the underlying suggestion for personal or professional development."

(*Id.* at 3.) In light of these thorough comments demonstrating Ferrier's perception of

Nofsinger's weakness in several areas, the Court has little difficulty concluding that

15

Nofsinger's failing grade and dismissal was the product of a "careful and deliberate" decision. In any event, the appeals process set forth in the Handbook and referred to in Mayhew and Boudinot's letters—which Nofsinger does not allege she took advantage of— provided Nofsinger more process than was due. For all of those reasons, Nofsinger's procedural due process claims cannot survive a motion to dismiss.

## B.  42 U.S.C. § 1983 Equal Protection Claims

Count II of Nofsinger's Amended Complaint sets forth the same basic allegations as her Complaint, save for adding the clarification that the Student Handbook contains the provision stating "the faculty may decide to dismiss you from the program *or permit you to repeat that clinical assignment*" (Am. Compl. ¶ 39 (emphasis added) (quoting Defs.' Mem. Supp. Mot. Dismiss Compl. Ex. E, at 27) (internal quotation marks omitted)) and the allegation that the individual Defendants permitted certain similarly situated students to repeat their clinical assignment. The remainder of that same paragraph contains the backbone of Nofsinger's equal protection claim, namely her allegation that

> [d]uring the same time period relevant to Plaintiff, at least three and . . . as many as six or more other students similarly situated to Plaintiff have been subject to VCU's dismissal procedures. The Faculty Defendants did not engage in the same violations of these students' Due Process rights. Instead, rather than dismissing those students from the DPT Program, the Faculty Defendants have allowed them to retake classes where their performance had allegedly been deemed unsatisfactory.

(Am. Compl. ¶ 39.) Nofsinger also asserts that the individual Defendants harbored some personal animus against her due to time she took off from school for medical reasons, and cites the following statement in an email exchange between Mayhew and Drain upon Nofsinger's return to school as evidence of that animus: "Very interesting – do remember

16

your comments on her and fully support your actions in regard to her!! Great Job Tom. Cecil." (Am. Compl. ¶ 40.)

The individual Defendants argue that the above allegations—which represent the sum and substance of Nofsinger's equal protection claim—fall well short of stating a claim. They contend that while Nofsinger alleges there were students similarly situated to her, Nofsinger's pleadings are utterly bereft of facts supporting that allegation. Nofsinger further fails, contend the individual Defendants, to plead any facts that plausibly identify any personal acts, much less any discriminatory intent, on the part of any university decisionmaker. And to the extent Nofsinger is proceeding under a "class of one" equal protection theory, the individual Defendants argue that theory is not viable in the context of this case, which involves the subjective decision of an educator vested with discretion. The individual Defendants accordingly argue that Nofsinger's equal protection claim must be dismissed.

To begin with, Nofsinger's allegations fall short of the pleading standard required under a traditional equal protection theory. "In order to survive a motion to dismiss an equal protection claim, a plaintiff must plead sufficient facts to demonstrate plausibly that he was treated differently from others who were similarly situated and that the unequal treatment was the result of discriminatory animus." *Equity in Athletics, Inc. v. Dep't of Educ.,* 639 F.3d 91, 108 (4th Cir. 2011) (citing *Morrison v. Garraghty,* 239 F.3d 648, 654 (4th Cir. 2001)). Nofsinger offers an allegation, but fails to plead any facts whatsoever, with respect to how the three to six students described in her Complaint were similarly situated to her. There are also no facts pled that would plausibly link Nofsinger's dismissal from the Program to any personal animus or discrimination on the part of the individual Defendants.

17

Drain's email to Mayhew upon Nofsinger's return from taking time away from school only reveals that Drain remembered certain unknown comments about Nofsinger, and that he supported actions Mayhew was taking with respect to Nofsinger. It is altogether unclear how these facts support any inference of discriminatory intent or personal animus.

To the extent Nofsinger is attempting to proceed under a "class of one" equal protection theory, her claim also fails. When proceeding under a class of one theory, a plaintiff must allege "that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). A number of courts have recognized that *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591 (2008), limited the circumstances under which a plaintiff can prevail under the "class of one" theory. *Engquist* held that a plaintiff cannot proceed on an equal protection claim under the class-of-one theory in the public employment context, reasoning that

> some forms of state action . . . by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases . . . treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

*Id.* at 603. A number of district court decisions have applied the above rationale expressed in *Engquist* to the public education context, *see Yan v. Penn State Univ.*, No. 4:10-CV-212, 2010 U.S. Dist. LEXIS 82812 (M.D. Pa. Aug. 13, 2010); *Smith v. Seligman Unified Sch. Dist.*, 664 F. Supp. 2d 1070, 1078–79 (D. Ariz. 2009); *DeFabio v. E. Hampton Union Free Sch. Dist.*, 658 F. Supp. 2d 461, 494–95 (E.D.N.Y. 2009) (dictum); *Bissessur v. Ind. Univ. Bd. of Trustees*,

No. 1:07-CV-1290, 2008 U.S. Dist. LEXIS 69299, at *23–27 (S.D. Ind. Sept. 10, 2008), and

under this set of facts, this Court follows them.

The Supreme Court in *Engquist* recognized an important constitutional distinction

between the government's exercise of power as a lawmaker, regulator, or licensor, and the

government's role when acting as a proprietor, manager, and employer. *Engquist*, 553 U.S.

at 598. Applying the class-of-one theory in the former context, where the government acts

as sovereign, was appropriate given "the existence of a clear standard against which

departures, even for a single plaintiff, could be readily assessed." *Id.* at 602. Thus in *Olech*,

the plaintiff's class-of-one claim was cognizable where a village property regulation

required the plaintiff to have a 33-foot easement for her water connection while other

property owners were only required to have a 15-foot one. The Court explained that where

individuals similarly situated appear to be treated differently, "the Equal Protection Clause

requires at least a rational reason for the difference, to assure that all persons subject to

legislation or regulation are indeed being 'treated alike, under like circumstances and

conditions.'" *Id.* (quoting *Hayes v. Missouri*, 120 U.S. 68, 71–72 (1887)). "There was no

indication in *Olech* that the zoning board was exercising discretionary authority based on

subjective, individualized determinations." *Id.* Instead, the village's "differential treatment

raised a concern of arbitrary classification, and [the Court] therefore required that the State

provide a rational basis for it." *Id.* at 603.

The public employment context, in contrast, was a poor fit for a class-of-one claim,

because state action in that area "by [its very] nature involve[s] discretionary

decisionmaking based on a vast array of subjective, individualized assessments." *Id.* Put

succinctly, "It is no proper challenge to what in its nature is a subjective, individualized decision that it was subjective and individualized." *Id.* at 604.

The Court agrees with those courts that have found the public education context an equally poor fit for class-of-one equal protection claims due to the inherently discretionary decisionmaking that occurs there. Grading and assessing professionalism—especially in the graduate school context—by necessity involves a host of subjective, individualized assessments. "[T]reating like individuals differently," *id.* at 603, in this context "is an accepted consequence of the discretion granted," *id.*, to educators and school administrators. As the Supreme Court recognized the "common-sense realization that government offices could not function if every employment decision became a constitutional matter," *id.* at 599 (quoting *Connick v. Myers*, 416 U.S. 138, 143 (1983)) (internal quotation marks omitted), this Court also recognizes the deleterious effects that would befall our public institutions of higher education if constitutional questions constantly arose out of grades and evaluations. For all of those reasons, Nofsinger's equal protection claims cannot survive.

### C. Amended Complaint Count III: Third-Party Beneficiary Claim for Breach of Contract Against USPT

Count III of Nofsinger's Amended Complaint asserts a third-party beneficiary claim for breach of contract against USPT. Nofsinger alleges that USPT and VCU entered into the Affiliation Agreement, which "expressly indicated that a VCU student taking a clinical instruction course . . . was a known and intended third party of the Affiliation Agreement," (Am. Compl. ¶ 47) and that USPT's employee, Ferrier, breached a number of material terms of the contract. Nofsinger alleges, *inter alia*, that USPT through its employee Ferrier failed to provide orientation, feedback, meaningful instruction, and guidance. She also claims that

20

Ferrier did not engage in ongoing communication with VCU and keep VCU informed of Nofsinger's progress.

USPT first argues that Nofsinger's pleadings would not survive a motion to dismiss because they fail to sufficiently allege facts to demonstrate that Nofsinger is a valid third party beneficiary of the Affiliation Agreement. USPT contends that Nofsinger is a mere incidental beneficiary—a "person who benefits only incidentally from a contract between others [who] cannot sue thereon." *Copenhaver v. Rogers*, 384 S.E.2d 593, 596 (Va. 1989). Nofsinger responds, however, that this case is controlled by *Ogunde v. Prison Health Services, Inc.*, 645 S.E.2d 520 (Va. 2007), where the Supreme Court of Virginia found that an inmate could sue on an agreement between the Virginia Department of Corrections and a prison health services company that "set[ ] forth the scope of health care services to be provided to the inmates," *id.* at 525. The Supreme Court of Virginia found that the agreement's purpose was to "provide cost effective, quality inmate health care services for up to approximately 6,000 inmates . . . at four correctional center facilities," *id.*, and that as the health services company's services rendered a direct benefit to Ogunde, he was a valid third-party beneficiary of the contract, *id.* at 525–26. The difficult question of whether *Ogunde* controls, however, need not be answered, for there is an alternative ground for decision.

USPT's second, and more persuasive, argument is that USPT cannot be held liable for any alleged damages that might flow from the Affiliation Agreement because VCU, and not USPT, made the determination that Nofsinger should be dismissed from the program. In Virginia, "[t]he elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that

obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation."

*Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004). Nofsinger is entitled to recover any direct

damages, and consequential damages arising from special circumstances that are not

ordinarily predictable, but within the contemplation of the parties at the time of contract

formation, so long as they flow from the breach. *See Long v. Abbruzzetti*, 487 S.E.2d 217,

219 (Va. 1997).

As set forth in detail above, under the Handbook's unequivocal terms, it was VCU's

Director of Clinical Education—and not any USPT employee—who assigned Nofsinger her

final grade in the Clinical, and who made the decision whether to allow Nofsinger to repeat

the Clinical. As USPT had no hand in this ultimate decision from which Nofsinger's alleged

damages flow, it follows USPT cannot be held liable for any breach of contract. For this

reason, Nofsinger's breach of contract claim against USPT cannot survive.

Given that the procedural due process, equal protection, and breach of contract

claims against the individual Defendants and USPT set forth in Nofsinger's pleadings

cannot survive a motion to dismiss, the Court will deny Nofsinger's motion for leave, and

grant the motions to dismiss those claims filed by the individual Defendants and USPT. As

Nofsinger's Amended Complaint has not been filed and thus does not supplant her

Complaint, three of the Complaint's counts remain: Counts III, V, and VI.

Count III, which recites 42 U.S.C. § 1983, will be dismissed because it does not state

a claim for relief—it merely states the means by which Nofsinger is seeking to enforce her

rights. Counts V and VI—both breach of contract claims brought against VCU—will also be

dismissed as those claims are barred by the Eleventh Amendment. *See Puerto Rico

Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (state agencies

22

enjoy Eleventh Amendment immunity regardless of the relief sought); *Herron*, 366 F. Supp. 2d at 363–64 (VCU is an arm of the state for purposes of Eleventh Amendment immunity).[7]

## IV.  CONCLUSION

For the reasons stated above, the Court DENIES Nofsinger's Motion for Leave to File Amended Complaint (Doc. No. 27), GRANTS the Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6) (Doc. No. 5) filed by VCU and the individual Defendants, GRANTS USPT's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. No. 12), and DENIES AS MOOT the Motion to Dismiss First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. No. 30) filed by VCU and the individual Defendants.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate Order shall issue.

```
_____/s/_____
James R. Spencer
United States District Judge
```

ENTERED this ___13th___ day of July 2012

---

[7] While VCU never mentions the Eleventh Amendment in arguing that the breach of contract claims are barred, but instead invokes state sovereign immunity principles, the Fourth Circuit has "stated in *dicta* . . . that 'because of its jurisdictional nature, a court ought to consider the issue of Eleventh Amendment immunity at any time, even *sua sponte.*'" *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 481 n.3 (4th Cir. 2005) (quoting *Suarez Corp. Indus. v. McGraw*, 125 F.3d 222, 227 (4th Cir. 1997)). The Court finds it highly appropriate to dismiss these claims on the basis of VCU's Eleventh Amendment immunity. VCU's clear intent is to assert sovereign immunity; it merely looks to the wrong source of law.